G. T. DOGGETT *v.* T. D. TINSLEY.

Pleading — Misjoinder of Parties.

In a suit to enforce a vendor's lien against a vendee for unpaid purchase money, a purchaser at a sale for taxes made subsequent to the sale by the vendor to the vendee is improperly joined as a party defendant with the vendee.[1]

Tax Title.

A tax title is both paramount and antagonistic to that of either a vendor or vendee, even though it is acquired subsequent to the sale of the property of the vendor to the vendee.

Appellee, Tinsley, filed his bill in the Chancery Court to remove a cloud from the title to certain property alleged to have been sold by him to one Roberts, and subsequently to have been purchased by appellant, Doggett, from the county tax-collector at a tax sale.

The bill alleges that Roberts purchased the property from complainant and executed promissory notes in payment therefor; that said notes were unpaid, and Roberts refused to pay same, though complainant had tendered him a warranty deed to the property on payment of the notes. It further alleges that appellant, Dog-

---

[1]
The vendor's lien, where it exists, may be enforced against the vendee, his heirs, volunteers under him and purchasers from him with notice. Stewart *v.* Ives, 1 S. & M. 197; Dunlap *v.* Burnett, 5 S. & M. 702; Clover *v.* Rawlings, 9 S. & M. 122; Walton *v.* Hargroves, 42 Miss. 18; Parker *v.* Foy, 43 Miss. 260.

The lien of the vendor is superior to the lien of a judgment creditor of the vendee, or purchasers under the judgment, and general assignees for the payment of debts. They are volunteers and get only the actual interest of the debtor, and are not *bona fide* purchasers for a valuable consideration. Dunlap *v.* Burnett, 5 S. & M. 702; Holloway *v.* Ellis, 3 Cush. 103; Parker *v.* Kelly, 10 S. & M. 184; Walton *v.* Hargroves, 42 Miss. 18.

gett, is claiming said property by virtue of a purported sale of same for taxes made by the tax-collector, which sale for taxes is charged to be void for numerous reasons set forth in the bill. The bill makes both Roberts and Doggett parties defendant, and prays a cancellation of the tax-collector's deed to Doggett, and a sale of the property to satisfy the lien of complainant. Doggett filed a demurrer on the ground that, there was a misjoinder of parties and of causes of action. The demurrer was overruled, and he appeals.

APPEALED from Chancery Court, Alcorn county, L. HAUGHTON, Chancellor.

Reversed and demurrer sustained, January 23, 1882.

*Attorney for appellant, W. M. Inge.*

*Attorneys for appellee; C. E. Stanley, and M. Green.*

Brief of W. M. Inge is not found in the record.

Brief of C. E. Stanley:
There are no merits in the demurrer herein, unless it be in that general, sweeping *omnium gatherum* clause so often resorted to by counsel with the hope that the court may observe defects not specially pointed out by the pleader—*no equity in the said bill.* The other causes of demurrer specially interposed have been settled by our statute, as herein shown.

The second cause of demurrer—misjoinder of parties—has no standing when we turn to Code 1880, § 1888, which provides that "No objection for misjoinder of parties shall be taken at the hearing, but the court shall decree upon the merits, without regard to such objections."

The third and fourth causes of demurrer—"misjoinder of causes," etc.—are equally well settled by Rev. Code 1880, §§ 1886, 1887, which need no argument. Independent of these sections of the Code, making such innovations upon the practice, these causes of demurrer would be untenable because of the allegation of combination, confederation, and fraudulent attempt on the part of defendants to cheat complainant out of the land in dispute.

In the absence of any special contract, it is made the duty by law of the vendee to pay taxes on land purchased by him and for which he holds bond for title. Watson *v.* Sawyers, 54 Miss. 65; Bradford *v.* Bank of Tenn., 13 How. (U. S.) 57.

A vendee holding a bond for title cannot buy a tax title and set it up against his vendor. Harkreader *v.* Clayton, 56 Miss. 383.

If Roberts, complainant's vendee, could not buy the land for taxes and reap any benefit, he cannot combine with Doggett to buy it, for "No one can do that by another which he cannot do himself."

The allegation in the bill is: "That the defendants combined and confederated together for the purpose of cheating and defrauding complainant out of his land (and then goes further to allege the mode and manner of the combination) by refusing to pay the taxes on same, and allowing said pretended sale and having land deeded to defendant, Doggett." * * *

Under the sale to Doggett, the law required the assessment completed and returned on the 1st of June, 1875. It was not returned until the 28th of June, 1875. It also required a certain verification by the assessor. No such verification or affidavit was ever made. If then the assessment was illegal because not returned in time and not sworn to as required by law, then the judgment rendered thereon, to wit: the confirmation by the board, opportunity being given, etc., was void, and the sale thereunder *ex necessitate legis* conferred no title upon Doggett. A tax-collector enforcing the collection of taxes under an erroneous assessment is a mere trespasser. Tuttle *v.* Everett, 51 Miss. 27.

The tax-payer consents to nothing, and demands that the officers of the law in all tax sales shall show their authority in all their proceedings. Cogburn *v.* Hunt.

If then the sale was void or voidable when it was made, March 3, 1879, then no subsequent legislation can make it valid, and Doggett cannot invoke the aid of the Acts of 1875, of the Code 1880, section 500, to cure the erroneous assessment and his void tax title. * * *

During the year 1878 the land assessment roll was never at any time approved by the board of supervisors, and never at any time delivered to the tax-collector, and according to the doctrine of Virden *v.* Bowers, a sale without such delivery is void. Virden *v.* Bowers, 55 Miss. 17. * * *

There could be no legal demand on complainant for taxes that year, because no legal taxes were due on the land and complainant was not in default. The Acts of 1875, p. 47, section 42, on which counsel for Doggett seems to rely, can have no effect if the taxes were illegal, or if the assessment was illegal, or if the levy was illegal, or if the levy was for more than the statute authorized. It can certainly have no application in a case of fraud or fraudulent combination on the part of the pretended owner of the tax title and Roberts, whose duty it was to pay all legal taxes.

Brief of M. Green:

The first point considered is, was the assessment valid or void by reason of the failure of the assessor to return assessment at the time prescribed by law to the chancery clerk to give opportunity for inspection and ascertainment of errors? If void, was the assessment validated by the curative act of July, 1875? (Sess. Acts, p. 10.)

The law required the assessment roll to be returned to the chancery clerk by the first Monday of June, there to remain for inspection until the first Monday of July, when the board proceeded to hear objections and pass judgment upon the rolls. The rolls in the case at bar were not returned until June 28th, four or five days before the time required by law for judgment to be rendered, and when in fact it was rendered. The validity of the assessment is the essence of a valid tax title. It is contended that this requirement is directory and not mandatory, and hence the failure to comply does not invalidate levy or assessment.

The analogy adopted in this State of likening and testing proceedings of sales for taxes to judgment and executions is sound, and affords easy solution to many difficulties. The assessment by the assessor is the declaration, the affidavit of the assessor the return, the approval of the board the judgment of condemnation, etc.

In providing for the commencement of this suit the law provided that the declaration and return (assessment rolls verified) should be made and filed with the chancery clerk on the first Monday of June, thereby giving the defendant (tax-payer) about thirty days to examine the action thus brought and to prepare to plead to it before the board who were to render the judgment—thus exactly like a case where the defendant is allowed by law a certain time after action is brought to plead. By the act of the assessor the

tax-payer is deprived of this right to plead, or what is the same thing, time to prepare his defense, which time is given him by law. Thus he is deprived of the notice granted him by law. The judgment is rendered against him without that notice which the law required. There must be the necessary constitutional elements present to warrant the rendition of the judgment, and the prime element is due notice, "due process of law." If the notice can be cut down by matter *in pias* to four days when the law gave thirty, then it could be cut down to a moment, or none at all. "And if the party has been illegally deprived of the opportunity to be heard in opposition, to the assessment, the defect is jurisdictional." Cooley on Tax, 227, 228; Thames Man. Co. *v.* Lathrop, 7 Conn. 550; Marsh *v.* Chesnut, 14 Ill. 223; 15 Id. 218; Borroughes on Tax, 232, 234, and cases cited.

But it is said it is *cured* by Act of 1875. (Sess. Acts, July, p. 10.) The Legislature has no power to cure a defect which is a constitutional prerequisite. Cooley on Tax, p. 227; Powers *v.* Penny, Miss.

If the judgment of the board was void for want of notice, any subsequent act declaring this void judgment valid would itself be *ultra vires.* In the case at bar the judgment had already been passed before the *curative* act, and hence its sole effect would be to declare a void judgment valid, which itself would be a legislative judgment and void. \* \* \*

The vendee under bond for title was bound to pay the taxes. The bill alleges that the vendee and the purchaser at tax-sale confederated together to cheat complainant by allowing the land to be forfeited and then buying it in. If the tax title was acquired by a fraud upon complainant, it is void as to him, however meritorious the title might be in the hands of an innocent person.

This is a proper case for taxfee here of $50. Code 1880, § 1424.

OPINION.—COOPER, J.:

The appellee by his bill attempted to litigate with Roberts for the purpose of foreclosing a lien upon certain lands sold to him, and also to test the validity of a tax title to the same land acquired by the appellant, Doggett. It is evident that Doggett is not in any manner interested in the issue to be tried between appellee and Roberts, for he claims by a title, which, if valid, is paramount

to the title both of the vendor and his vendee. His title, though acquired subsequent to the sale by Tinsley to Roberts, is not derivative, but antagonistic, and if it prevails would render fruitless the controversy between them, in so far as the enforcement of the vendor's lien is sought, by a destruction of the title to the land. He is therefore improperly joined as a defendant, and the chancellor erred in overruling the demurrer interposed by him.

As the bill, however, charges facts which, if proved, may entitle complainant to a cancellation of the tax title held by Doggett upon repayment to him of the amount paid by him at the tax sale, and interest and damages, a point which we do not now adjudicate, it is proper to permit an amendment directing a separate bill to be filed against Doggett alone, as provided by the Code 1880, § 1881.

*It is therefore ordered that the decree be reversed* and the demurrer of the defendant, Doggett, be sustained, but that complainant may, within sixty days after the filing of the mandate in the court below, exhibit his separate bill against the defendant, Doggett, without the issuance of further process thereon; in default of which, his said bill heretofore filed shall be dismissed as to said defendant, Doggett, but without prejudice as to any other proceedings he may thereafter institute touching the matters in said bill contained.